**In re Jerry Dan POWERS and Shirley Powers, Debtors.**

**No. 02–10322–RLJ–13.**

United States Bankruptcy Court,
N.D. Texas,
Abilene Division.

June 24, 2010.

Phil Black, Law Offices of Phil Black, Abilene, TX, for Debtors.

### MEMORANDUM OPINION
### AND ORDER

ROBERT L. JONES, Bankruptcy Judge.

In this case, the chapter 13 debtors, Jerry and Shirley Powers, along with the

standing chapter 13 trustee, Walter O'Cheskey, request that the Court determine whether property acquired by the debtors after confirmation of their chapter 13 plan, but before their discharge, is property of the estate or not. The property at issue is a cause of action (and the resulting lawsuit and recovery from a settlement of the lawsuit). The debtors contend the cause of action is not property of the estate; the trustee contends that it is property of the estate.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). This Memorandum Opinion and Order contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

### Statement of Facts

There is no dispute concerning the facts in this case. Jerry and Shirley Powers filed their voluntary petition for relief under chapter 13 of the Bankruptcy Code on April 15, 2002. They successfully obtained confirmation of a chapter 13 plan on March 7, 2003. After completion of their chapter 13 plan payments, they received their chapter 13 discharge on May 6, 2005.

Jerry Powers had a heart attack in late July, 2004, approximately three weeks after having taken the drug Vioxx. Mr. Powers proceeded to have four heart surgeries and nine stents inserted. He has also suffered a stroke.

Mr. Powers saw an advertisement regarding the potential dangers of Vioxx in November of 2004. He contacted the Gallagher Law Firm in December of 2004; in January 2005, he completed a questionnaire from the Gallagher Law Firm regarding his potential claim. In September 2005, approximately three months after Mr. And Mrs. Powers received their chapter 13 discharge, Mr. Powers received a letter from the Gallagher Law Firm stating, "we are evaluating your potential Vioxx case." Mr. Powers apparently qualified as a class claimant in connection with a Vioxx lawsuit and was advised, in June 2009, that he was to receive a settlement on account of his claim.

The total recovery to Mr. Powers under the Vioxx settlement is $115,000.00. Mr. Powers received a $25,000.00 disbursement of the settlement funds from the Gallagher Law Firm, which amount has been spent. The Gallagher Law Firm is presently holding $85,000.00 [1] and is apparently awaiting the Court's decision here before they remit the funds to either Mr. Powers, if the Court determines the funds are not property of the bankruptcy estate, or to the trustee, if the Court determines the funds are property of the bankruptcy estate.

The parties stipulated that the aggregate amount of the unsecured claims discharged in the Powers' bankruptcy case is $65,405.37. They further stipulated that if such amount accrued interest at 6.0% per annum, an additional $31,220.16 would be added to the aggregate amount, resulting in total unpaid claims, assuming accrued interest, of $96,625.53.

Mrs. Powers broke her hip in June 2009. Both Mr. and Mrs. Powers were hospitalized at the same time in June 2009. They presently owe over $85,000.00 in medical bills, all of which were incurred after they received their chapter 13 discharge.

Finally, the Court notes that this case was previously closed on December 1, 2005, and it was reopened by the Court by

---

1. The parties did not introduce evidence that explains what happened to the other $5,000.00.

its order of November 30, 2009, upon motion of the debtors.

### Discussion

The parties are asking the Court to decide the technical legal issue of whether the settlement funds constitute property of the bankruptcy estate or not.[2] Section 541 of the Bankruptcy Code identifies the property that becomes estate property. *See* 11 U.S.C. § 541. It generally provides that property owned by the debtor at the time the debtor files bankruptcy, i.e., the petition date, becomes property of the bankruptcy estate. *Id.* at § 541(a). Property of the estate also includes, for example, any inheritance a debtor receives within 180 days of the bankruptcy filing. *Id.* at § 541(a)(5). For a chapter 13 case, the concept of estate property is expanded to include, in addition to section 541 property, "all property of the kind specified in [section 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted . . . , whichever occurs first. . . ." 11 U.S.C. § 1306(a). Subsection (b) of section 1306 provides that except as provided in the chapter 13 plan or order confirming the plan, the debtor remains "in possession of all property of the estate."

As here, a potential problem arises given the language of yet another chapter 13 provision, section 1327. Section 1327(b) states that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of the plan vests all of the property of the estate in the debtor." Then, subsection (c) of section 1327 states that such property is "free and clear of any claim or interests of any creditor provided for by the plan." Sections 1306 and 1327 appear conflicting because, as here, the question raised is whether property obtained by a debtor *after* confirmation becomes estate property under section 1306(b) or does it somehow avoid such characterization and vest immediately in the debtor under section 1327(b), free and clear of estate claims under subsection (c) of section 1327.

Courts have addressed this conflict by using one of five approaches: the reconciliation approach, the estate termination approach, the estate transformation approach, the estate preservation approach, and a fifth approach, offered by a district court in the Northern District of Texas, that is similar in many respects to the reconciliation approach. *See In re Rodriguez*, 421 B.R. 356, 374 (Bankr.S.D.Tex. 2009) (identifies the first four approaches); *see also Woodard v. Taco Bueno Restaurants, Inc.*, No. 4:05–CV–804–Y, 2006 WL 3542693, *5 (N.D.Tex. Dec. 8, 2006). The first approach, the estate termination approach, treats all property of the estate as property vested in the debtor upon confirmation, with confirmation effectively terminating the chapter 13 estate. *See In re Rodriguez*, 421 B.R. at 374; *see also In re Jones*, 420 B.R. 506, 514 (9th Cir. BAP 2009). This approach, adopted by the Ninth Circuit's Bankruptcy Appellate Panel, presumes that vesting property of the estate in the debtor at confirmation terminates the estate. *In re Jones*, 420 B.R. at 515. Courts have criticized this approach as it arguably renders section 1306 meaningless regarding property acquired by the debtor after the case is filed but before the case is closed, dismissed, or converted. *See In re Rodriguez*, 421 B.R. at 375; *see also Woodard*, 2006 WL 3542693 at *5.

The second approach, the estate transformation approach, holds that "only prop-

---

**2.** Section 541 of the Code provides that an estate is created upon the filing of a bankruptcy case.

388

erty necessary for the execution of the plan remains property of the estate after confirmation and remaining non-essential property passes to the debtor at confirmation." *In re Rodriguez,* 421 B.R. at 376; *see also Telfair v. First Union Mortg. Corp.,* 216 F.3d 1333, 1340 (11th Cir.2000). Commonly referred to as the "split the baby approach," this approach requires a determination as to which assets should be devoted to the debtor and which assets belong to the chapter 13 estate for execution of the plan. *Woodard,* 2006 WL 3542693 at *6–7. This approach has also been heavily criticized as ignoring the language of section 1306, which provides that *all* property acquired before the case is closed, dismissed, or converted becomes estate property. *Id.* (emphasis added); *see also In re Rodriguez,* 421 B.R. at 376. As section 1306 does not distinguish between property necessary for the execution of the plan and non-essential property that may remain property of the debtor, many courts consider the estate transformation approach as rewriting the language of section 1306. *See In re Rodriguez,* 421 B.R. at 376. Courts have also criticized this approach for requiring a "subjective analysis not contemplated or provided for by the Code" in determining what property must be devoted to the plan as estate property. *See Barbosa v. Solomon,* 235 F.3d 31, 35 (1st Cir.2000).

The third approach, the estate preservation approach, holds that "all property of the estate remains property of the estate after confirmation until discharge, dismissal, or conversion." *Telfair,* 216 F.3d at 1340. This approach has also been criticized as going too far by "lumping together assets that exist at confirmation and those received in the future." *In re Rodriguez,* 421 B.R. at 378; *see also Barbosa,* 235 F.3d at 36. By treating all property as property of the estate until discharge, dismissal, or conversion, this approach ef-

fectively ignores the language of section 1327(b) by not vesting property of the estate in the debtor at the time of confirmation. *See Woodard,* 2006 WL 3542693 at *6.

The fourth, and most commonly adopted approach by the courts, is the reconciliation approach. Adopted by the First, Eighth, and Eleventh Circuits, the reconciliation approach attempts to give meaning to both sections 1306 and 1327. *See In re Waldron,* 536 F.3d 1239 (11th Cir.2008); *Barbosa v. Solomon,* 235 F.3d 31 (1st Cir. 2000); *Sec. Bank of Marshalltown, Iowa v. Neiman,* 1 F.3d 687 (8th Cir.1993). Under the reconciliation approach, property that exists at confirmation vests in the debtor under section 1327, but property acquired after confirmation funds the chapter 13 estate, which continues to exist post-confirmation. *See In re Rodriguez,* 421 B.R. at 374. When compared to the other approaches that tend to ignore either section 1306 or section 1327, or require the court's subjective treatment of post-confirmation property, this approach is viewed as giving effect to both sections and thereby attempting to harmonize the two provisions. *Id; see also In re Waldron,* 536 F.3d at 1243; *Barbosa,* 235 F.3d at 36–37. While this approach has been adopted by most courts, it has also drawn criticism. In *Woodard,* an unreported case out of the Northern District of Texas, the court declined to adopt the reconciliation approach, stating:

[T]he court fails to see how this approach gives harmonious meaning to both sections. First at the time of confirmation, the debtor does not enjoy the property of the bankruptcy estate free and clear of the creditors. The debtor has to faithfully fulfill his obligations under the plan first, which includes paying his creditors the amounts set forth in his confirmed plan in accordance with

its payment schedule. And that can last for as long as sixty months. Second, how can the bankruptcy estate receive assets acquired after confirmation that will be used to pay claims of creditors if those assets are considered vested in the debtor free and clear of any creditor claims? This approach seems to hold anomalously that a debtor must fund claims against the estate with assets that are vested in him free and clear of any claims. In other words, this approach takes the position that the estate continues to exist with assets but at the same time is divested of those assets and unencumbered by any creditors. Lacking logical consistency, surely our circuit would have been reluctant at best to adopt this approach.

*Woodard,* 2006 WL 3542693 at * 7 (Means, J.). The *Woodard* court chose to ignore the four approaches developed by the courts and adopted a new approach involving a different interpretation of "vesting." *Id.* The court stated as follows:

> [A]t the time of confirmation, the debtor is given an immediate and fixed right to the future enjoyment of the bankruptcy estate, whatever assets it consists of, free and clear of any claims of any creditor provided for by the confirmed plan. Although this is an *immediate and fixed right,* it is one the debtor does not enjoy until he has faithfully completed his obligations under the plan and is entitled to a discharge. Under this interpretation, after confirmation, the bankruptcy estate continues to exist and assets maybe added to the estate in accordance with section 1306, but the debtor is immediately vested with the right to the future enjoyment of the assets in that estate free and clear of any creditor claims provided for by the plan once he faithfully completes his obligations under the plan and is entitled to a discharge.

*Woodard,* 2006 WL 3542693 at *9. This approach is similar to the reconciliation approach as the chapter 13 estate survives confirmation, with property acquired after confirmation belonging to the estate. It differs from the reconciliation approach given the court's interpretation of what it means under section 1327(b) for property to "vest" in the debtor. Under this approach, "vesting" is interpreted to mean the debtor maintains an immediate and fixed right to property held by the bankruptcy estate, but the debtor does not enjoy this right until he has faithfully completed his obligations under the plan. *Id;* *see also U.S. v. Harchar,* 371 B.R. 254, 265 (N.D.Ohio 2007).

■ The provisions of sections 1306 and 1327 present a quandary. The problem here, given the particular facts and circumstances of this case, is that the Court fails to appreciate the consequences resulting from a decision that the settlement funds are or are not estate property. The Court is inclined to endorse the view that estate property that exists at the time of confirmation vests in the debtor per section 1327(b), but property acquired by the debtor after confirmation becomes estate property under section 1306(a)(1). If the latter described property may potentially enhance the dividend to creditors, then the debtor, the trustee, or an unsecured creditor can move under section 1329 to modify the debtor's chapter 13 plan to increase the debtor's payments. *See* 11 U.S.C. § 1329. But the debtors here have completed their payments and have long since received their discharge. Section 1329 provides that a modification may be proposed "after confirmation ... but before the completion of payments...." This case was closed; the issue arose after the debtors moved to reopen the case.

■ The Court recognizes that, in some cases, an issue may arise concerning the

debtor's obligation to disclose an asset obtained after confirmation. But here, neither the standing chapter 13 trustee nor the United States Trustee contends or even suggests that the debtors attempted to conceal the cause of action and the subsequent settlement or that the debtors have failed to act in good faith. In addition, as noted in the Court's statement of facts, the debtors incurred additional expenses as a result of their medical problems. Even if a modification had been proposed prior to the debtors' completion of their plan payments, this case hardly appears to be a good candidate for modification. Without a modification, the debtors and their creditors are bound by the debtors' confirmed plan. 11 U.S.C. § 1327(a).

### Conclusion

The Court will direct that the settlement funds are property of the estate, which, in accordance with section 1306(b) of the Bankruptcy Code, are to be delivered to the debtors. The Court will further direct that this case be closed.

Accordingly, it is

ORDERED that the Vioxx settlement funds held by the Gallagher Law Firm shall be remitted to the debtor Jerry Powers; it is further

ORDERED that, fourteen days after entry of this order, the Clerk of the Court shall close this case.